**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:

JEFFREY SOLOMON SIMPSON,

Debtor.

------------------------------------------------------------------------x

608941 NJ INC.,

Plaintiff,

against

JEFFREY SOLOMON SIMPSON,

Defendant.

------------------------------------------------------------------------x

Chapter 11

Case No. 26-10359 (LGB)

Adversary Proceeding

Case No. _____

## COMPLAINT

608941 NJ Inc. ("Oak," or "Plaintiff"), by its attorneys, Binder & Schwartz LLP, alleges

as follows:

## PRELIMINARY STATEMENT

1.      This is an adversary proceeding by Oak seeking a declaration that obligations

owed by Jeffrey Solomon Simpson ("Debtor" or "Mr. Simpson") to Oak are not dischargeable

pursuant to section 523(c)(1) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure

("Bankruptcy Rule") 4007.

2.      Litigation between Mr. Simpson and Oak is pending before the New York County

Supreme Court, Commercial Division, Index No. 158055/2023 (the "State Court Action").

Oak's claims against Mr. Simpson involve fraudulent, willful, and malicious acts by Mr.

Simpson, including acts performed while acting in a fiduciary capacity.  Accordingly, whether

adjudicated in the State Court Action or before this Court, any damages awarded on the basis of such claims are not dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4. Venue is proper in this District under 28 U.S.C. § 1409(a). This adversary proceeding is related to a bankruptcy case under Chapter 11 that is pending in this District (Case No. 26-10359 (LGB)).

5. This adversary proceeding is commenced pursuant to section 523(c) of the Bankruptcy Code and Bankruptcy Rules 4007 and 7001(f).[1]

6. Oak does not consent to entry of a final order or judgment by the Bankruptcy Court in this matter.

## PARTIES

7. Oak is a corporation duly organized and existing under, and by virtue of, the laws of the State of New Jersey, with its principal place of business in Toronto, Canada.

8. Mr. Simpson is the Debtor in the above-captioned case and, upon information and belief, is a resident of the State of New York, domiciled at 1055 Park Avenue Unit 4, New York, New York 10028.

---

[1] Oak intends to file a motion seeking (i) relief from the automatic stay such that the claims in the State Court Action can be litigated to conclusion in the State Court; and (ii) to stay this Adversary Proceeding pending the conclusion of the State Court Action. Oak filed the Adversary Complaint at this time to comply with the deadline set forth in Bankruptcy Rule 2007.

## FACTUAL BACKGROUND

### A.     The Corporate Structure

9.     Oak and its affiliated companies are a family business focused on, among other things, the management of its real estate portfolio, which includes retail, office, and storage facilities, primarily located in Ontario and Florida.

10.     In 2017, Oak sought to expand its U.S. real estate holdings and entered into the December 11, 2017 Limited Liability Company Operating Agreement (the "AREH LLC Agreement") that governs the operations of Arch Real Estate Holdings LLC ("AREH").

11.     Pursuant to the AREH LLC Agreement, AREH has two members: Oak is the "investor member" and JJ Arch LLC ("JJ Arch") is the "managing member" responsible for the management and operations of real property holdings in which Oak has invested significant sums of money.

12.     Since AREH's inception, Oak has invested at least $3 million directly into AREH to fund its overhead and operations, and over $50 million in ten large-scale real estate projects that were developed, managed and/or controlled by AREH or JJ Arch.

13.     The members of JJ Arch are Mr. Simpson and Jared Chassen ("Mr. Chassen"). Mr. Simpson holds the majority of membership interest in JJ Arch and was formerly the managing member of JJ Arch with management and operational responsibility.  Mr. Chassen holds a minority interest in JJ Arch.

### B.     The State Court Action

14.     On August 14, 2023, Mr. Simpson, individually and allegedly derivatively on behalf of JJ Arch and AREH, commenced the State Court Action against Mr. Chassen and First Republic Bank.  The State Court Action largely concerns corporate governance disputes between

3

Messrs. Simpson and Chassen following their respective efforts to force the other to resign, and claims concerning the alleged mismanagement of JJ Arch and AREH.

15.     In October 2024, Oak filed a motion seeking the appointment of a receiver for JJ Arch and was joined as a party to the State Court Action pursuant to Section 6401(a) of the CPLR.

16.     In November 2023, the State Court entered a series of interim orders concerning the governance rights of JJ Arch and AREH. The crux of these orders provided that: (i) Oak would act as the sole managing member of AREH; (ii) August 2023 purported resignation instruments of both Chassen and Simpson were "void and of no force or effect"; (iii) either Simpson or Chassen could unilaterally consent to a Major Decision of AREH; and (iv) any "Company Major Decision" under JJ Arch's operating agreement required the prior written consent of Chassen.  *In re JJ Arch LLC*, 663 B.R. 258, 265 (Bankr. S.D.N.Y. 2024), *motion for relief from judgment denied*, No. 24-10381, 2025 WL 3465625 (Bankr. S.D.N.Y. Dec. 2, 2025).

**C.     Oak Asserts Claims Against Mr. Simpson Through the Filing of an Intervenor Complaint**

17.     On November 3, 2023, Oak filed an intervenor complaint (the "Intervenor Complaint"), a copy of which is attached hereto as Exhibit A.  Oak asserted direct and derivative claims against Mr. Simpson and JJ Arch, alleging that Mr. Simpson engaged in prohibited and unlawful acts on behalf of JJ Arch and AREH that devastated all stakeholders in the real estate portfolio, including Oak.

18.     These alleged acts of mismanagement by Mr. Simpson include, for example, failing to comply with requirements of the Internal Revenue Code to obtain promised tax benefits, failing to make debt servicing payments causing properties to go into default, engaging

in financial mismanagement and other misconduct with respect to JJ Arch and AREH, making misrepresentations to investors, and providing investors with inadequate reporting.

19. The claims asserted in the Intervenor Complaint against Simpson individually include: (i) breach of fiduciary duties to Oak, as the managing member of JJ Arch (Count I); (ii) tortious interference with contract and prospective business advantage by causing JJ Arch to breach its obligations to Oak pursuant to the AREH LLC Agreement (Counts III and IV); (iii) breach of fiduciary duty against Simpson, derivatively on behalf of AREH (Count V); (iv) defamation for making certain knowingly false statements about Oak and its business (Count VI); (v) fraud resulting from Simpson's material misrepresentation of fact to Oak regarding promised tax benefits, and the return of funds in the event that a satisfactory re-investment opportunity could not be identified (Count VII).

### 1. The Fraud Claim

20. Holding certain assets in a vehicle under Section 1031 of the Internal Revenue Code (the "1031 Exchange") can be an advantageous investment strategy because it avoids immediate tax penalties and allows for continuous reinvestment by rolling proceeds from a sold property directly into a new property.

21. A 1031 vehicle enables real estate portfolios to upgrade assets without incurring tax penalties, optimizing the portfolio value over time.

22. Mr. Simpson and others acting at his direction represented to Oak that certain of the properties in the portfolio would be held in a 1031 vehicle, which would provide an essential part of the financial success of the properties.

23. Oak had to elect whether to participate in the 1031 vehicle prior to the closing on a property. Because at the time of the investment a re-investment asset had not been identified, Oak was told by investor relations that Oak needed to "rely on [AREH's] expertise to reinvest

5

the proceeds" and that AREH "operates with specific investment criteria and believes it can successfully reinvest all or a portion of the capital into one of [AREH's] strategic acquisitions." (Order to Show Cause Exhibit I, *Simpson v. Chassen*, Index No. 158055/2023 (Sup. Ct. N.Y. Cnty. Oct. 17, 2023), NYSCEF No. 236.)

24. Mr. Simpson's investor relations team also represented to Oak that "[i]f a satisfactory re-investment opportunity cannot be identified, funds shall be returned to investors." (*Id.*)

25. Finally, Mr. Simpson's investor relations team also told Oak that Mr. Simpson would be participating in the 1031 vehicle alongside Oak so their "interests are fully aligned in achieving a successful outcome." (*Id.*)

26. Mr. Simpson knew these representations were false when made, and made them with the intent to induce Oak's reliance.

27. Oak reasonably and justifiably relied on the misrepresentations when it made its investment decisions.

28. In fact, AREH deliberately failed to comply with the IRS requirements for the 1031 Exchange causing the Exchange to fail. Contrary to Mr. Simpson's misrepresentation, investors did not get a return of their funds following the failure of the Exchange.

29. Oak now faces unexpected and significant tax liabilities exceeding any possible return on the property. Meanwhile, Mr. Simpson had minimal funds at risk, was not aligned in interest with Oak, and thus remains insulated from the financial consequences of the failed 1031 Exchange.

30. In June 2023, Mr. Simpson also made material misstatements to Oak in connection with a capital call that Mr. Simpson issued to raise additional funds for AREH's overhead expenses.

31. Oak has a legal obligation to fund AREH and Mr. Simpson represented to Oak that its $650,000 capital contribution would be treated as equity in AREH.

32. After Oak paid the capital call, Mr. Simpson reclassified the capital contribution by issuing a subsequent capital call for one specific property (Myrtle Point), which he then paid using Oak's capital contribution to AREH. In other words, Mr. Simpson used Oak's funds to pay AREH's receivables on behalf of Myrtle Point.

33. As a result, Oak's capital is no longer treated as equity in AREH, as promised, but instead is treated as equity in Myrtle Point and is subordinated behind other investors and is at risk of being lost because of the condition of the project.

34. Oak has no obligation to provide additional equity to Myrtle Point at the project level and there is no operating agreement that permits the reallocation of a capital call after it has been paid.

35. Mr. Simpson knew the statements made to Oak in connection with the capital call were false at the time they were made.

36. Oak reasonably and justifiably relied on these misrepresentations in funding the capital call.

37. Oak has suffered damages by being prevented from realizing an equity interest in AREH as a result of its capital contribution and facing risk that the entirety of its capital contribution will be lost on account of the reclassification.

**2.      The Breach of Fiduciary Duty Claims**

38. Oak has asserted a breach of fiduciary duty claim against Mr. Simpson.

39.     During the relevant time, Mr. Simpson was the managing member of JJ Arch, which, in turn, is the managing member of AREH.  Oak is the investor member of AREH.

40.     As a result of this relationship and Mr. Simpson's status as the controlling person of JJ Arch, Mr. Simpson owed fiduciary duties to Oak.

41.     Mr. Simpson knowingly and repeatedly breached his fiduciary duties to Oak.

42.     The Intervenor Complaint sets forth a detailed recitation of Mr. Simpson's pattern of behavior that breached his fiduciary duties.  *See generally* Ex. A.  These actions include, but are not limited to, (i) holding sale proceeds hostage in order to demand additional capital contributions from Oak; (ii) refusing to provide meaningful financial information on a project-level; (iii) forbidding Oak from communicating with relevant third parties and threatening legal action if Oak did so; (iv) interfering with the legal representation of AREH; (v) making misrepresentations to Oak concerning capital; (vi) discriminating against Oak relative to other investors by, for example, charging lesser interest rates to "friends and family" investors and misrepresenting to Oak that capital calls to other investors had been made when they had not; (vii) threatening to fire all AREH employees and cease operations if Oak does not provide additional capital, even in the absence of a capital call; and (viii) creating a hostile business atmosphere, which has been damaging to critical relationships with lenders, contractors, tenants, and others.

43.     Simpson's conduct has caused Oak to incur substantial damages, including tax liabilities, the loss of value of its investments in AREH and the related portfolio, the loss of its own time and investment in dealing with Simpson's improper conduct, and substantial legal fees.

44.     The Intervenor Complaint also asserts a breach of fiduciary duty claim derivatively on behalf of AREH against JJ Arch and Mr. Simpson.

45. As a result of Mr. Simpson's status as the controlling person of JJ Arch, Mr. Simpson also owed fiduciary duties to AREH.

46. As set forth in the Intervenor Complaint, and as summarized above, Mr. Simpson breached his fiduciary duties to AREH by failing to act in the best interest of the company, causing substantial damage to AREH.

### 3. Tortious Interference Claims

47. In the Intervenor Complaint, Oak also asserted claims against Mr. Simpson for tortious interference with contract and tortious interference with prospective business advantage.

48. Based on Mr. Simpson's wrongful acts described in the Intervenor Complaint and summarized above, Simpson caused JJ Arch to breach its obligations to Oak pursuant to the AREH LLC Agreement.

49. Mr. Simpson's conduct was intended to frustrate JJ Arch's ability to perform under the AREH LLC Agreement and resulted in JJ Arch's breach of the agreement.

50. Mr. Simpson's conduct was intentional, willful, and was calculated to, and did, cause damage to Oak.

51. AREH is responsible for management of the properties in the real estate portfolio. As a result of Mr. Simpson's wrongful conduct before and after his removal from JJ Arch, Mr. Simpson caused losses to the value of Oak's investments in the properties.

52. Mr. Simpson's willful, tortious conduct has impaired Oak's business interests such that Oak faces the loss of its initial investment and has been deprived of any return on its investments.

### 4. Defamation Claim

53. In the Intervenor Complaint, Oak also asserted claims against Mr. Simpson for defamation based on Mr. Simpson's knowingly false statements regarding Oak's business

54. Mr. Simpson has made disparaging, knowingly false statements concerning Oak's competence and capabilities in the business of real estate investment, with the purpose of damaging Oak's reputation in the industry both among potential business partners, lenders, and other business associates.

55. Simpson knew these statements were false at the time they were made, or else demonstrated reckless disregard for the truth or falsity.

56. Statements as to Oak's solvency and creditworthiness or ability to make payments when due prejudice Oak in its profession, including its ability to secure financing and co-investors in projects.

57. Such knowingly false statements have damaged Oak and have prejudiced its ability to enter into future business relationships.

**D.      Mr. Simpson Files for Bankruptcy**

58. On February 19, 2026 (the "Petition Date"), Mr. Simpson filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

59. As of the Petition Date, the State Court Action had been pending for more than three years.  The State Court has stayed the State Court Action pending guidance from this Court as to the scope of the bankruptcy stay.

**COUNT I**

**NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(2)(A)**

60. Oak incorporates and re-alleges the above allegations as if set out in full herein.

61. Section 523(a)(2)(A) provides, in pertinent part, that an individual debtor is not entitled to a discharge from any debt "for money . . . to the extent obtained by false pretenses, a false representation, or actual fraud . . . ."

62. As set forth above, in the Intervenor Complaint, Oak has asserted a fraud claim against Mr. Simpson on the basis of Mr. Simpson's misrepresentations of fact.

63. The elements of common law fraud include: a false representation of material fact, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury.

64. The common law fraud elements under New York law are consistent with fraud under bankruptcy law.

65. If there is a determination by the State Court or this Court that Mr. Simpson committed fraud and a resulting judgment or default judgment grounded in a finding of fraud, then the Court should find that the judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

**COUNT II**

**NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(4)**

66. Oak incorporates and re-alleges the above allegations as if set out in full herein.

67. Section 523(a)(4) provides, in pertinent part, that an individual debtor is not entitled to a discharge from any debt "for fraud or defalcation while acting in a fiduciary capacity . . . ."

68. As set forth above, in the Intervenor Complaint, Oak has asserted two claims against Mr. Simpson for breach of fiduciary duty for actions that he took in his capacity as the managing member of JJ Arch and AREH. Oak asserted a direct claim, and a claim derivatively on behalf of AREH.

69. If the State Court or this Court determines that a fiduciary relationship existed between Mr. Simpson and Oak/AREH, and that Mr. Simpson committed fraud or defalcation

11

while acting in such capacity, then the Court should find that the resulting judgment or default judgment is nondischargeable under 11 U.S.C. § 523(a)(4).

**<u>COUNT III</u>**

**<u>NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(6)</u>**

70. Oak incorporates and re-alleges the above allegations as if set out in full herein.

71. Section 523(a)(6) provides, in pertinent part, that an individual debtor is not entitled to a discharge from a debt resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity . . . ."

72. As set forth above, in the Intervenor Complaint, Oak has asserted claims against Mr. Simpson for tortious interference with contract and tortious interference with prospective business advantage.

73. The tortious interference claims are premised on Mr. Simpson's intentional conduct calculated to cause damage to Oak.

74. Oak has also asserted a claim for defamation against Mr. Simpson.

75. The Intervenor Complaint alleges that Mr. Simpson made disparaging, knowingly false statements concerning Oak's competency and capabilities in the business of real estate investment, with the purpose of damaging Oak's reputation.

76. To the extent that Oak proves in connection with these tortious interference claims or the defamation claim that Mr. Simpson acted willfully and maliciously, and that Mr. Simpson's willful and malicious acts caused injury, then the Court should find that the resulting judgment or default judgment is nondischargeable under 11 U.S.C. § 523(a)(6).

WHEREFORE, Plaintiff respectfully requests a determination that any judgment entered against Mr. Simpson for fraud, breach of fiduciary duty, and any other claims involving willful and malicious acts that caused injury, including the asserted claims for tortious interference and defamation, are not dischargeable pursuant to section 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code, and for such other and further orders and relief as this Court deems just and proper.

Dated: May 26, 2026
New York, New York

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

/s/  Eric B. Fisher
Eric B. Fisher
Lindsay A. Bush
275 Third Avenue, 26th Floor
New York, New York 10017
Tel: (212) 510-7008
Email: efisher@binderschwartz.com
Email: lbush@binderschwartz.com

*Attorneys for Plaintiff Oak*