**BINDER & SCHWARTZ LLP**
675 Third Avenue, 26th Floor
New York, NY 10017
Tel.: (212) 510-7008

*Counsel for 608941 NJ Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
In re:

JEFFREY SOLOMON SIMPSON,

Chapter 11

Case No. 26-10359 (LGB)

Debtor.
-----------------------------------------------------------------------x

608941 NJ INC.,

Plaintiff,

against

Adversary Proceeding

JEFFREY SOLOMON SIMPSON,

Case No. 26-01046 (LGB)

Defendant.
-----------------------------------------------------------------------x

**608941 NJ INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
CLARIFY THE SCOPE OF THE AUTOMATIC STAY, OBTAIN RELIEF FROM THE
AUTOMATIC STAY, AND ASK THAT THE COURT PARTIALLY
<u>ABSTAIN FROM HEARING THE ADVERSARY PROCEEDING</u>**

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 2

BACKGROUND ......................................................................................................... 4

    A.    OAK IS JOINED AS A PARTY TO THE STATE COURT ACTION AND FILES THE INTERVENOR COMPLAINT ......................................................... 4

    B.    FOR MORE THAN TWO YEARS, SIMPSON REFUSES TO PROVIDE ANY DISCOVERY IN CONNECTION WITH THE OAK INTERVENOR ACTION .................................................................................................... 7

ARGUMENT ............................................................................................................. 10

    I.    THE AUTOMATIC STAY APPLIES ONLY WITH RESPECT TO OAK'S DIRECT CLAIMS AGAINST THE DEBTOR .................................................. 10

    II.    THE *SONNAX* FACTORS WEIGH IN FAVOR OF GRANTING RELIEF FROM THE STAY ......................................................................................... 11

    III.    THE COURT SHOULD EXERCISE ITS DISCRETION TO PARTIALLY ABSTAIN FROM THE ADVERSARY PROCEEDING PENDING THE CONCLUSION OF THE STATE COURT ACTION ......................................... 17

CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*In re 950 Meat & Grocery Corp.*,
617 B.R. 224 (Bankr. S.D.N.Y. 2020) ..................................................................... 10, 12, 14

*In re Anton*,
145 B.R. 767 (Bankr. E.D.N.Y. 1992) ............................................................................ 14, 17

*Barbaro v. Wider (In re Wider)*,
Bankr. No. 09–72993, 2009 WL 4345411 (Bankr. E.D.N.Y. Nov. 30, 2009) .......................21

*Blackmer v. Richards (In re Richards)*,
59 B.R. 541 (Bankr. N.D.N.Y. 1986)....................................................................................21

*In re Burger Boys, Inc.*,
183 B.R. 682 (S.D.N.Y. 1994).............................................................................................12

*Evans v. Ottimo*,
469 F.3d 278 (2d Cir. 2006) .................................................................................................19

*Fowler & Huntting Co. v. Granoff (In re Granoff)*,
242 B.R. 216 (Bankr. D.Conn. 1999)....................................................................................21

*In re JJ Arch LLC*,
No. 24-10381, 2024 WL 2928033 (Bankr. S.D.N.Y. June 10, 2024), aff'd, No.
24-cv-08649, 2026 WL 1622865 (S.D.N.Y. June 5, 2026)..................................... 10, 16, 17

*Little Rest Twelve, Inc. v. Visan*,
458 B.R. 44 (S.D.N.Y. 2011)................................................................................................18

*Papadopoulos v. Gazes (In re Papadopoulos)*,
No. 14 Civ. 4750, 2015 WL 996425 (S.D.N.Y. Mar. 5, 2015) ....................................... 11, 12

*In re Project Orange Assocs., LLC*,
432 B.R. 89 (Bankr. S.D.N.Y. 2010) ..................................................................... 11, 14, 17

*Queenie, Ltd. v. Nygard Int'l*,
321 F.3d 282 (2d. Cir. 2003) ...............................................................................................13

*Roberts v. Goidel (In re Goidel)*,
150 B.R. 885 (Bankr. S.D.N.Y. 1993) ..................................................................................21

*In re Sanchez*,
No. 14-22667, 2016 WL 5376189 (Bankr. S.D.N.Y. Sept. 26, 2016)...................................19

*Simpson v. Chassen*,
No. 25-cv-04004, ECF No. 31 (S.D.N.Y. June 27, 2025).......................................................3

*In re Sonnax Indus., Inc.*,
  907 F.2d 1280 (2d Cir. 1990)......................................................................................*passim*

*Wallace v. Guretzky*,
  No. CV–09–0071, 2009 WL 3171767 (E.D.N.Y. Sept. 29, 2009) ........................................21

*In re Wally Findlay Galleries (New York), Inc.*,
  36 B.R. 849 (Bankr. S.D.N.Y. 1984) ................................................................................16

*Williams v. Horowitz (In re Horowitz)*,
  Bankr. No. 09–75567, 2010 WL 814103 (Bankr. E.D.N.Y. Mar. 1, 2010) ...........................21

*In re Wisell*,
  494 B.R. 23 (Bankr. E.D.N.Y. 2011) ................................................................................19

**Statutes**

11 U.S.C. § 108(b) ........................................................................................................15

11 U.S.C. § 362(a)(1) ....................................................................................................10

11 U.S.C. § 362(d)(1)............................................................................................. 1, 11, 21

11 U.S.C. § 523(a)(2)(A)......................................................................................... 3, 17, 19

11 U.S.C. § 523(a)(4)........................................................................................ 3, 17, 19, 20

11 U.S.C. § 523(a)(6)............................................................................................ 3, 17, 19

28 U.S.C. § 1334(c)(1)....................................................................................................18

608941 NJ Inc. ("Oak") respectfully submits this memorandum of law in support of its motion seeking:

(1) a declaration clarifying that the automatic stay does not extend to (a) Oak's claims against non-debtors in the action pending before the New York County Supreme Court, Commercial Division, Index No. 158055/2023 (the "State Court Action") and (b) the counterclaims asserted by Jeffrey Simpson ("Debtor" or "Mr. Simpson") and JJ Arch LLC ("JJ Arch") against Oak in the State Court Action;[1]

(2) relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1); and

(3) this Court's partial abstention from deciding certain issues in the recently filed adversary proceeding, *608941 NJ Inc. v. Simpson*, Adv. Proc. No. 26-01046 (Bankr. S.D.N.Y. May 26, 2026) (the "Adversary Proceeding"), because those issues are the subject of the State Court Action or, alternatively, a stay of the Adversary Proceeding pending resolution of the State Court Action.

Oak seeks modification of the stay and permissive abstention to permit it to proceed to a final determination on the merits of the claims against Debtor in the State Court Action. Should the Court grant this motion, Oak acknowledges that the determination of nondischargeability and Oak's enforcement of any judgment that may be entered against Debtor in the State Court Action would remain before this Court absent further relief from the stay.

---

[1] Due to the voluminous nature of the referenced filings from the State Court Action, instead of being filed as exhibits, the documents from the State Court Action are hyperlinked to the filings from the New York State Court Electronic Filing system ("NYSCEF") and are cited with reference to the NYSCEF docket number.

## PRELIMINARY STATEMENT

More than three years ago, Jeffrey Simpson commenced the State Court Action before the New York County Supreme Court, Commercial Division. Since that time, Mr. Simpson has engaged in a sustained campaign obstructing the very proceedings he initiated—refusing to participate in discovery, failing to appear for depositions, filing serial frivolous removals to federal court, publicly declaring his refusal to recognize the State Court's authority, and ultimately filing this bankruptcy case on the eve of decisions on a series of fully submitted dispositive motions.

In November 2023, Oak—having invested more than $50 million in the real estate projects at issue and guaranteed loans in excess of $350 million—was compelled to file an intervenor complaint in the State Court Action (the "Intervenor Complaint") to protect its interests from Mr. Simpson's mismanagement. The Intervenor Complaint has been litigated alongside the initial case commenced by Mr. Simpson as part of the State Court Action for nearly three years. At the time Mr. Simpson filed his bankruptcy petition, the State Court had fully submitted dispositive motions before it and a July 2026 trial date on its calendar. Oak's Intervenor Complaint was filed against Mr. Simpson, JJ Arch and Arch Real Estate Holdings LLC ("AREH"). Through this motion, Oak seeks clarification that the automatic stay imposed by the Debtor's Chapter 11 case does not extend to Oak's claims against non-debtors JJ Arch and AREH, nor does it extend to counterclaims asserted by Debtor and JJ Arch in response to the Intervenor Complaint.

With respect to Oak's claims against Debtor in the Intervenor Complaint, the relevant factors set forth in *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990) (the "*Sonnax* Factors") overwhelmingly favor granting relief from the automatic stay. Following Mr. Simpson's third attempt to remove the State Court Action to federal court, U.S. District Judge

2

Furman issued an anti-removal injunction, recognizing that Mr. Simpson had repeatedly used "removal as a vehicle to defy [the state court's] orders." *Simpson v. Chassen*, No. 25-cv-04004, ECF No. 31 at 2-3 (S.D.N.Y. June 27, 2025). After filing his individual bankruptcy petition, Mr. Simpson filed a motion with the U.S. District Court seeking relief from the anti-removal injunction to permit the State Court Action to be removed to federal court. ECF No. 70-72. On June 3, 2026, U.S. District Judge Vargas denied Mr. Simpson's motion, finding that granting Mr. Simpson relief from the ant-removal injunction "would be futile, given that Plaintiff's removal would be subject to both mandatory abstention, upon timely motion, pursuant to Section 1334(c)(2) of the Bankruptcy Code, and permissive abstention, pursuant to Section 1334(c)(1)." ECF No. 84 at 1. Thus, the State Court is the only forum where all parties—including non-debtor parties whose claims are unaffected by the stay—are present, and where the entire controversy can be resolved in a single proceeding. Lifting the stay will not interfere with the administration of this estate, and, in fact, will facilitate the determination of claims against the estate.

For similar reasons, this Court should exercise its discretion to partially abstain from hearing Oak's recently-filed Adversary Proceeding seeking a declaration that debt arising from the claims that are the subject of the Intervenor Complaint are nondischargeable pursuant to Bankruptcy Code Section 523(a)(2)(A), (4), and (6). Oak respectfully submits that this Court should permit the litigation before the State Court to conclude and then address issues regarding the nondischargeability of the debt and the enforcement of any judgment against the Debtor through this bankruptcy proceeding.

Denying this request for relief would reward Mr. Simpson's years of obstructionist tactics, waste the substantial judicial and party resources already invested, and force the parties

to relitigate the same facts before a new court unfamiliar with the extensive record. Accordingly, this Court should grant Oak's motion and permit the State Court Action, including the claims asserted in the Intervenor Complaint, to proceed against Mr. Simpson to a final determination on the merits.

**BACKGROUND**

A. **OAK IS JOINED AS A PARTY TO THE STATE COURT ACTION AND FILES THE INTERVENOR COMPLAINT**

Oak is the investor member in AREH and, as explained below, currently serves as AREH's acting managing member pursuant to court order. Previously, Mr. Simpson through JJ Arch served as the managing member of AREH. Oak has invested more than $50 million in the properties managed by AREH and has guaranteed loans on certain projects (either directly or through affiliates) in excess of $350 million. Numerous third-party investors were also invested in the properties managed by AREH (and previously, by Mr. Simpson).

On August 14, 2023, Mr. Simpson, individually and allegedly derivatively on behalf of JJ Arch and AREH, commenced the State Court Action by filing a complaint against Jared Chassen and First Republic Bank. (NYSCEF Doc. No. 1.) On October 17, 2023, Oak filed an Order to Show Cause in the State Court Action seeking the appointment of a receiver for JJ Arch. (NYSCEF Doc. Nos. 225-269.) Following a hearing, the State Court ordered further briefing on Oak's application and on October 27, 2023, entered an interim order requiring the parties to comply with their existing obligations under the governing agreements and further requiring that certain information be made available to Oak. (NYSCEF Doc. No. 292, the "Interim Order.") The Court also found that following Oak's motion, Oak was joined as a party pursuant to Section 6401(a) of the CPLR. (*Id.* at 2 n.1)

Soon after entry of the Interim Order, Mr. Simpson, among other things, furloughed all AREH employees, thereby making it impossible for the business to continue operating. On November 3, 2023, to preserve its significant financial investment, Oak filed a second Order to Show Cause seeking to allow Oak to act as the managing member of AREH and the subsidiaries it owns and manages during the pendency of this lawsuit or, alternatively, to appoint a temporary receiver for JJ Arch. (NYSCEF Doc. Nos. 296-318.) On November 3, 2023, the State Court held a hearing on Oak's second Order to Show Cause and appointed Oak as managing member of AREH on an interim basis. (NYSCEF Doc. Nos. 374, 412.) Oak has continued to act as managing member since that time. Given the lack of clarity about whether Mr. Simpson or Mr. Chassen would ultimately have successfully terminated the other, the State Court also allowed either one of them to consent on behalf of JJ Arch to the major decisions of AREH and its subsidiaries. (NYSCEF Doc. No. 418.)

The Intervenor Complaint, which was filed on November 3, 2023, asserted direct and derivative claims against Mr. Simpson and JJ Arch, alleging that Mr. Simpson had engaged in contractually prohibited and economically devastating acts both individually and on behalf of JJ Arch and AREH, which have harmed all stakeholders in the real estate portfolio, including Oak. (*See generally* NYSCEF Doc. No. 319.) These alleged acts of mismanagement by Mr. Simpson include, for example, failing to comply with requirements of the Internal Revenue Code to obtain promised tax benefits, failing to make debt servicing payments causing properties to go into default, engaging in financial mismanagement and other misconduct with respect to JJ Arch and AREH, and making misrepresentations to investors and providing them with inadequate reporting. (*See generally* NYSCEF Doc. No. 319 ¶¶ 25-48.) The claims against Mr. Simpson individually include: (i) breach of fiduciary duties to Oak, as the managing member of JJ Arch

(Count 1); (ii) tortious interference with contract and prospective business advantage by causing JJ Arch to breach its obligations to Oak pursuant to the AREH LLC Agreement (Counts III and IV); (iii) breach of fiduciary duty against Simpson, derivatively on behalf of AREH (Count V); (iv) defamation for making certain knowingly false statements about Oak and its business (Count VI); (v) fraud arising from, among other things, Mr. Simpson's material misrepresentation of fact to Oak regarding promised tax benefits, and the return of funds in the event that a satisfactory re-investment opportunity could not be identified (Count VII); and (vi) declaratory judgment seeking a declaration that JJ Arch is no longer AREH's Managing Member and Oak is AREH's managing member (Count VIII). Oak's Intervenor Complaint also asserts claims against JJ Arch for breach of fiduciary duty, breach of contract, breach of fiduciary duty, derivatively on behalf of AREH, and declaratory judgment (Counts I, II, V, VIII). Finally, Oak asserted a claim for equitable accounting against JJ Arch and AREH (Count IX).

Mr. Simpson and JJ Arch, in turn, filed separate answers to the Intervenor Complaint and counterclaims against Oak, asserting claims for breach of contract and breach of fiduciary duty. (NYSCEF Doc. Nos. 471, 483.) As a result of Mr. Simpson's prior improper attempts to remove the State Court Action to federal court, Oak has had to file its motions to dismiss the counterclaims asserted by Mr. Simpson and JJ Arch in the Intervenor Complaint three times.

In February 2024, Oak filed motions to dismiss the Counterclaims. (NYSCEF Doc. Nos. 610-614 (Motion #9); 616-621 (Motion #10).) Neither Simpson nor JJ Arch filed any opposition to the motions to dismiss. The motions to dismiss were fully submitted in March 2024. After the motions to dismiss were fully submitted, Simpson filed an unauthorized and bad faith bankruptcy on behalf of JJ Arch and removed the case to federal court; and on June 10,

2024, the State Court denied the motions to dismiss without prejudice, subject to refiling if the case was remanded.  (NYSCEF Doc. Nos. 639-40.)

On March 21, 2025, Oak renewed its motions to dismiss the Counterclaims.  (NYSCEF Doc. Nos. 1390-1394 (Motion #21); 1395-1400 (Motion #22).)  Again, neither Simpson nor JJ Arch filed any opposition to the motions to dismiss.  Instead, Simpson again removed the case to federal court despite being the plaintiff in the State Court Action; and the State Court denied the motions as moot without prejudice.  (NYSCEF Doc. Nos. 1563-64.)

On November 21, 2025, Oak again renewed its motions to dismiss the Counterclaims.  (NYSCEF Doc. Nos. 2083-2087 (Motion #33); 2088-2093 (Motion #34).)  After multiple adjournments requested by Mr. Simpson (NYSCEF Doc. Nos. 2163, 2328), the motions to dismiss were fully submitted for the third time on January 13, 2026, again without any opposition.  Following Mr. Simpson's instant bankruptcy proceeding, the State Court administratively closed the motions to dismiss without prejudice due to the bankruptcy stay entered in this action.  (NYSCEF Doc. Nos. 2372-73.)

**B.** **FOR MORE THAN TWO YEARS, SIMPSON REFUSES TO PROVIDE ANY DISCOVERY IN CONNECTION WITH THE OAK INTERVENOR ACTION**

In January and February 2024, Oak and Mr. Chassen served discovery requests on Mr. Simpson and JJ Arch.  (NYSCEF Doc. No. 2231.)  Mr. Simpson and JJ Arch failed to respond to these requests, failed to produce any documents, and did not move the State Court for entry of a protective order or for additional time within which to respond.  Oak, on other hand, responded to discovery requests and produced thousands of pages of responsive discovery, all by the applicable discovery deadline.  (*Id.*)

Following dismissal of the JJ Arch bankruptcy and the resulting remand of the State Court Action, on December 17, 2024, the State Court issued a Scheduling Order requiring

responses to all outstanding discovery demands by January 10, 2025, service of any additional discovery requests by the same date, and responses and objections to all remaining requests by February 10, 2025. (NYSCEF Doc. No. 1001.) Consistent with the Scheduling Order, Oak served additional document requests and interrogatories on Mr. Simpson and JJ Arch on January 10, 2025. (NYSCEF Doc. No. 2231.) Mr. Simpson and JJ Arch failed to respond to any of these discovery requests or produce any documents by the court-ordered deadline. (*Id.*) Rather than engage in discovery, Mr. Simpson filed a series of frivolous and unsuccessful removals to federal court and sent a barrage of communications disparaging the State Court and declaring his intention to boycott the State Court Action entirely.

On May 29, 2025, the State Court Action was remanded for a third time. (NYSCEF Doc. No. 1534.) The following day, Mr. Chassen filed an Order to Show Cause seeking to find Mr. Simpson in civil and criminal contempt of court following Mr. Simpson's unlawful seizure of one of the properties at issue from the Receiver over the Memorial Day weekend. (NYSCEF Doc. Nos. 1537-1555.) The State Court heard testimony on the contempt motion on July 21, 2025, August 1, 2025, August 4, 2025, and October 10, 2025. (NYSCEF Doc. Nos. 2000, 2051, 2050, 2052.) At the conclusion of the hearing on the motions for contempt, the State Court set a trial date for the State Court Action of July 27, 2026, and ordered the parties to submit a proposed case management order, providing for the completion of discovery in advance of trial. (NYSCEF Doc. No. 2052 at 119:8-120:19.)

Despite efforts to meet and confer, Mr. Simpson refused to agree to any schedule that provided for the completion of discovery in advance of trial, forcing the parties to submit competing proposals to the State Court. (NYSCEF Doc. No. 2057.) At a November 18, 2025 discovery conference, the State Court directed Mr. Simpson to confirm by the end of the day

whether he would provide responses to outstanding discovery within 20 days and gave the parties until the end of the week to identify deficiencies in discovery responses. (NYSCEF Doc. No. 2231.) Mr. Simpson failed to comply with this deadline. Immediately after the conference, counsel for Mr. Simpson and JJ Arch declared for the first time that they would not appear for any depositions in the State Court Action. (*Id.*) On November 19, 2025, Oak filed a letter requesting that the State Court set specific dates for depositions and discovery responses. On December 11, 2025, the parties appeared for a final discovery conference, at which the State Court stated it would hold no further conferences on discovery issues and that any disputes must be resolved through motion practice.

Mr. Simpson and JJ Arch ultimately failed to appear for their noticed depositions and failed to respond to any discovery requests or produce any documents. On January 9, 2026—days after failing to appear for deposition—Mr. Simpson emailed the State Court stating, among other things, that the Court "[does not] get to participate at this point" and demanding that the Court "should not be touching [his] case." (NYSCEF Doc. No. 2248.)

On January 14, 2026, Oak filed a motion to strike the pleadings of Mr. Simpson and JJ Arch, for entry of a default judgment, and for costs. (NYSCEF Doc. No. 2231.) On February 6, 2026, Oak's motion to strike was fully submitted, without any opposition by Mr. Simpson or JJ Arch.

On February 12, 2026, counsel for Oak sent additional correspondence to the State Court concerning Mr. Simpson's repeated statements indicating that he refused to recognize the State Court's authority and had no intent to participate in the State Court Action. (NYSCEF Doc. No. 2348.)

On February 19, 2026, Mr. Simpson commenced the instant bankruptcy proceeding.

9

<u>**ARGUMENT**</u>

**I.     THE AUTOMATIC STAY APPLIES ONLY WITH RESPECT TO OAK'S <u>DIRECT CLAIMS AGAINST THE DEBTOR</u>**

The Bankruptcy Code provides that a bankruptcy petition operates as a stay of all litigation against a debtor.  11 U.S.C. § 362(a)(1).  However, the automatic stay does not stay claims against non-debtors.  *In re 950 Meat & Grocery Corp.*, 617 B.R. 224, 228 (Bankr. S.D.N.Y. 2020) (citing *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986)).   The stay also does not extend to counterclaims asserted by a debtor.  *In re JJ Arch LLC*, No. 24-10381, 2024 WL 2928033, at *8 (Bankr. S.D.N.Y. June 10, 2024), aff'd, No. 24-cv-08649, 2026 WL 1622865 (S.D.N.Y. June 5, 2026) ("because Section 362(a) does not, by its own terms, stay proceedings where a debtor appears as a party-plaintiff, these claims are not automatically subject to the automatic stay."); *see also In re 950 Meat & Grocery Corp.*, 617 B.R. at 228 (citing *Verragio, Ltd. v. AE Jewelers, Inc.*, No. 15 Civ. 6500, 2017 WL 1753478, at *1 (S.D.N.Y. Apr. 27, 2017)).

Thus, the claims asserted in the Intervenor Complaint against JJ Arch for breach of fiduciary duty, breach of contract, breach of fiduciary duty asserted derivatively on behalf of AREH, and declaratory judgment (Counts I, II, V, VIII), are claims against non-debtor parties that are not covered by the automatic stay.  The same is true for Oak's claim for equitable accounting against JJ Arch and AREH (Count IX).  Similarly, the counterclaims that Mr. Simpson and JJ Arch have asserted against Oak for breach of contract and breach of fiduciary duty, NYSCEF Doc. Nos. 471, 483, are also outside the scope of the automatic stay.

Accordingly, Oak respectfully requests that the Court clarify that the automatic stay in this case does not apply to the claims asserted against JJ Arch and AREH, or the counterclaims JJ Arch and Mr. Simpson have asserted against Oak.

**II.   THE *SONNAX* FACTORS WEIGH IN FAVOR OF GRANTING RELIEF FROM THE STAY**

Oak respectfully requests that this Court modify the automatic stay "for cause" pursuant to 11 U.S.C. § 362(d)(1) to allow its claims against Debtor to proceed in state court. The term "cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis. *Papadopoulos v. Gazes (In re Papadopoulos)*, No. 14 Civ. 4750, 2015 WL 996425, at *2 (S.D.N.Y. Mar. 5, 2015). However, the legislative history of Section 362 reveals that Congress recognized that "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (quoting H.R.Rep. No. 95–595, at 341 (1977), U.S.Code Cong. & Admin. News 1978, at 5963, 6297; S.Rep. No. 95–989, at 50 (1978), U.S.Code. Cong. & Admin. News 1978, at 5787, 5836).

In making the determination as to whether parties should be left to their chosen forum, the Second Circuit applies the twelve *Sonnax* factors:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re 950 Meat & Grocery Corp.*, 617 B.R. at 228 (quoting *In re Sonnax Indus., Inc.*, 907 F.2d at 1286).

Not every factor is relevant in every case, and the Court "need not assign them equal weight." *In re Papadopoulos*, 2015 WL 996425, at *3. Here, each of the relevant *Sonnax* factors weighs decisively in favor of lifting the stay.

**Factor 1 (Complete Resolution)**. The State Court is the only forum where all parties' claims, which are based on the same set of facts and involve the same parties, can be resolved. The State Court Action has been pending for almost three years and all parties with interests in the real estate projects, including a court-appointed receiver now managing certain properties at issue, are before the State Court. Importantly, Mr. Simpson himself filed the complaint that began the proceedings in State Court.

Further, after filing the instant bankruptcy proceeding, the District Court refused to allow Mr. Simpson to remove the State Court Action to federal court, leaving the State Court as the only forum where the dispute can be litigated to conclusion. Thus, given that the Bankruptcy Court will not be presented with any opportunity to adjudicate the State Court Action, the stay should be lifted "in order to allow timely adjudication of the issues in appropriate forums that could provide complete relief." *In re Burger Boys, Inc.*, 183 B.R. 682, 689 (S.D.N.Y. 1994).

In addition, the Intervenor Complaint does not only involve claims against Mr. Simpson. Rather, it asserts many of the same claims against JJ Arch, including breach of fiduciary duty (Count I), breach of fiduciary duty derivatively on behalf of AREH (Count V); and declaratory judgment seeking a declaration that Oak, not JJ Arch, is AREH's Managing Member. There are additional claims in the Intervenor Complaint against JJ Arch for breach of contract (Count II), and a claim for equitable accounting against JJ Arch and AREH (Count IV). The automatic stay

does not stay the claims against non-debtor parties, and these claims share the same set of facts and will involve the same or very similar legal analysis. In addition, Mr. Simpson and JJ Arch have each asserted counterclaims against Oak, which are also not covered by the automatic stay.

Thus, while Justice Cohen has issued a blanket stay of the State Court Action pending guidance from this Court as to the scope of the automatic stay, numerous claims in the Intervenor Complaint involve non-Debtors and will eventually proceed in State Court regardless and the District Court has refused to allow the State Court Action to be removed, finding that mandatory and permissive abstention would apply to the action if removal were permitted. The claims Oak has asserted in the Intervenor Complaint against Mr. Simpson arise from the same set of underlying facts as the other claims in the State Court Action. Preventing the claims against Mr. Simpson from being adjudicated alongside the remaining claims that will be litigated before the State Court would be inefficient and would risk inconsistent results for claims arising out of the same facts and involving the same legal issues. Thus, the State Court is the only forum in which all parties are present, and the entire controversy can be resolved.[2]

**Factor 2 (No Interference with the Bankruptcy Case).** Litigation regarding all of Oak's claims and all of Mr. Simpson's and JJ Arch's counterclaims against Oak involving the underlying real estate portfolio is *already proceeding* in State Court. Mr. Simpson's continued participation—or deliberate non-participation—in the State Court Action will not interfere with the bankruptcy case. Lifting the stay to permit adjudication of the merits will not impair the administration of this estate; enforcement of any judgment against the Debtor will be addressed

---

[2] While the automatic stay in limited circumstances can apply to non-debtors where the claim against the non-debtor "will have an immediate adverse . . . consequence for the debtor's estate," *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d. Cir. 2003), none of Oak's claims against non-debtors fall into this exception.

through the bankruptcy proceeding. *See In re 950 Meat & Grocery Corp.*, 617 B.R. at 230; *In re Anton*, 145 B.R. 767, 771 (Bankr. E.D.N.Y. 1992) ("The stay is being lifted only to permit an adjudication on the merits.").  In addition, certain of the real estate assets at issue in the proceedings in State Court are owned by JJ Arch, not Mr. Simpson individually.  Thus, determining whether, under state law, Mr. Simpson has an ownership interest in JJ Arch and its properties depends upon the determination under state law as to whether Mr. Simpson remains a member of JJ Arch, or was properly removed by Mr. Chassen.  This issue has been at the center of the litigation in the State Court for years.  Similarly, determining the value of Oak's claims against JJ Arch in the Intervenor Complaint (which, as stated above are not covered by the automatic stay) will inform whether JJ Arch is insolvent, thereby impacting its members' financial interests in the company, whoever the members are determined to be under state law.

All claims asserted by and against Mr. Simpson are rooted in the same contracts and the same facts regarding management of the underlying properties. If the stay as to claims against the Debtor is not lifted, the parties will be forced to try the same facts twice—once in State Court and again in Bankruptcy Court—resulting in precisely the "[m]ultiplicity of suits involving unnecessary time and expense" that courts seek to avoid. *In re Anton*, 145 B.R. at 770.

**Factors 4, 10, and 11 (Specialized Tribunal, Judicial Economy, and Trial Readiness).** The State Court has presided over the State Court Action, including Oak's Intervenor Complaint, for more than three years and has extensive familiarity with the complex contracts, the corporate and management structure, and the factual record concerning the multiparty disputes at issue. It is the only forum where all parties with an interest are represented. *See In re Project Orange Assocs., LLC*, 432 B.R. at 109 (finding these factors weigh strongly in favor of permitting state court litigation where the judge had presided for more than two years

and was "quite familiar" with the complicated agreements involved). The State Court is thus the forum most likely to promote an expeditious, economical, and complete resolution of the claims asserted in the State Court Action, including Oak's claims against the Debtor.

After three years of contentious litigation, the State Court set the case for trial in July 2026. At the time of the Petition, the State Court also had before it fully-submitted unopposed dispositive motions—including Oak's motion to strike Mr. Simpson's and JJ Arch's pleadings and for default judgment based on their complete failure to participate in discovery. The State Court has all relevant parties before it and stands on the precipice of bringing the case to conclusion.

Moreover where, as here, there are fully submitted dispositive motions pending before the State Court and Mr. Simpson's deadlines to respond to the motions expired prior to the filing of the Petition, the missed deadlines cannot be revived or cured by the bankruptcy filing. Section 108(b) of the Bankruptcy Code provides that "if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor...may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, *and such period has not expired before the date of the filing of the petition*, the trustee may only file, cure, or perform...before the later of" the end of such period or 60 days after the order for relief. 11 U.S.C. § 108(b) (emphasis added). Oak's motion to dismiss Mr. Simpson's and JJ Arch's counterclaims were fully submitted for a third time on January 13, 2026, without any opposition. Similarly, Mr. Simpson's deadline to respond to Oak's motion to strike Mr. Simpson's and JJ Arch's pleadings and for default judgment expired on February 6, 2026—prior to the filing of the Petition. Thus, judicial economy would best be served by permitting the State Court to decide the pending fully submitted motions.

15

It is instructive that in connection with the JJ Arch bankruptcy (that was subsequently dismissed as a bad faith filing), Judge Mastando lifted the automatic stay and found that even back in June 2024, the first, tenth, and eleventh *Sonnax* factors clearly favored lifting the stay because of, inter alia, "Justice Cohen's familiarity with the issues raised by both parties," and "the interrelated nature of their respective claims." *In re JJ Arch LLC*, 2024 WL 2928033, at \*10. Further two years later, in its June 3, 2026 decision, the District Court again found that "as the state court has been handling this matter for a number of years, the presiding Judge is fully familiar with the issues presented, and trial has been scheduled for July 2026 . . . there can be little doubt that it could be timely adjudicated in State Court." ECF No. 84 at 3.

**Factor 12 (Balance of Harms)**. The balance of harms weighs heavily in favor of granting relief. Mr. Simpson commenced the State Court Action more than three years ago. Oak and the other moving parties have invested significant time and resources litigating before the State Court, including a four-day evidentiary hearing on contempt, dispositive motions to strike Simpson's pleadings and for default judgment, countless other motions, and preparation for a July 2026 trial. These proceedings followed months of Mr. Simpson's categorical refusal to participate in discovery for claims he himself commenced and counterclaims he asserted. To deny relief would effectively reward Mr. Simpson for his long history of boycotting the State Court Action and force all parties to start from scratch in a new forum after Mr. Simpson engaged in repeated acts of willful and contumacious conduct in the State Court Action. This Court should not be used as a vehicle to relitigate claims, circumvent prior state court rulings, or serve as an appellate forum to review the proceedings below. *See In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984).

In connection with the JJ Arch bankruptcy, Judge Mastando found that the twelfth factor favored lifting the stay because "the parties spent seven months litigating their rights before Justice Cohen," which resulted in a "robust record" and "the issuance of Interim Orders designed to, in the words of Justice Cohen, 'keep the ship afloat while the litigation proceeds ....' [Ch. 11 Dkt., Doc. 14-1, p. 82]." *In re JJ Arch LLC*, 2024 WL 2928033, at *10. The parties have now spent two years' worth of additional time and expense litigating the State Court Action and Justice Cohen's familiarity with the case and the robustness of the record have only increased over time.

In addition, the timing of the filing of the instant bankruptcy case, particularly in light of Mr. Simpson's lengthy history of unsuccessfully seeking to remove the State Court Action, suggests that Mr. Simpson's filing was intended to seek shelter from the imminent rulings of the State Court. Even if the timing, standing alone, does not constitute bad faith as a cause to lift the automatic stay, it should still be considered in the Court's analysis. *See, e.g., In re Project Orange Assocs., LLC*, 432 B.R. at 113 ("[t]he filing of a petition on the "eve of foreclosure or eviction" is not sufficient alone to constitute bad faith "cause" to lift the automatic stay, but is one of many circumstances which can be considered in a totality of the circumstances analysis."); *In re Anton*, 145 B.R. at 771 ("the timing strongly suggests that this Chapter 11 was filed for the shelter provided by the automatic stay against the pending litigation").

III.     **THE COURT SHOULD EXERCISE ITS DISCRETION TO PARTIALLY ABSTAIN FROM THE ADVERSARY PROCEEDING PENDING THE CONCLUSION OF THE STATE COURT ACTION**

In conjunction with lifting the stay, this Court should partially abstain from deciding the Adversary Proceeding pending resolution of certain issues before the State Court. On May 26, 2026, Oak commenced the Adversary Proceeding by filing an Adversary Complaint seeking a determination and declaration of nondischargeabililty pursuant to Bankruptcy Code Section

523(a)(2)(A), (4), and (6).  For all of the reasons set forth above, the *Sonnax* factors weigh in favor of lifting the automatic stay to permit the State Court to resolve the complex multiparty litigation between Mr. Simpson and several non-debtor parties that has been pending in the State Court for over three years.  Oak respectfully requests that if this Court grants the lift-stay motion, it also should exercise its discretion to partially abstain from hearing the issues in the Adversary Proceeding that are the same claims asserted in the Intervenor Complaint.

Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court may "in the interest of justice, or in the interest of comity with State courts or respect for State law . . . abstain[ ] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  In considering discretionary abstention, courts weigh the following factors: "(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants." *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011).

The District Court analyzed these factors in connection with its decision denying Mr. Simpson's motion seeking to remove the State Court Action and found that "Plaintiff's removal would be subject to both mandatory abstention  . . . and permissive abstention."  ECF No. 84 at 1.  Permissive abstention is appropriate here as well, as the underlying disputes that are the subject of the Adversary Proceeding are similar and at times identical to the claims in the Intervenor Complaint.

As an initial matter, the factual and legal issues to be decided in connection with the Intervenor Complaint substantially overlap with the factual and legal issues in the Adversary

Proceeding. With respect to a determination of nondischargeability under Section 523(a)(2)(A), the elements of the Bankruptcy Code § 523(a)(2)(A) are identical to the elements of New York common law fraud claim. *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006). To except a debt from discharge pursuant to Section 523(a)(4), the plaintiff must establish that (1) "the debtor acted while in a fiduciary capacity" and (2) whether the acts undertaken constitute (a) fraud or (b) defalcation, which is defined as a "misappropriation or failure to account" and "requires a showing of conscious misbehavior or extreme recklessness." *In re Sanchez*, No. 14-22667, 2016 WL 5376189, at *5 (Bankr. S.D.N.Y. Sept. 26, 2016) (internal citations omitted). Similarly, Oak's claim and AREH's derivative claim against Mr. Simpson for breach of fiduciary duty require a showing that Mr. Simpson committed tortious conduct while acting in a fiduciary capacity. While the standard under Section 523(a)(4) is higher than a standard breach of fiduciary duty claim, where the debtor's "breach of his fiduciary duty was conscious and done with the intent to 'deceive, manipulate or defraud,'" it is sufficient to satisfy Section 523(a)(4). *In re Wisell*, 494 B.R. 23, 40 (Bankr. E.D.N.Y. 2011). Finally, a nondischarge pursuant to Section 523(a)(6) requires a showing of "willful and malicious injury by the debtor to another entity." "This standard is akin to an intentional tort which requires that the actor 'intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 41 (internal citation omitted). Oak has asserted claims for tortious interference with contract and prospective business advantage, which are based on Mr. Simpson's intentional conduct calculated to cause damage to Oak. Oak has also asserted a defamation claim against Mr. Simpson premised on making disparaging, knowingly false statements with the purpose of damaging Oak's reputation. The

underpinning of these claims is willful and malicious injury, the standard for a nondischarge pursuant to Section 523(a)(4).

In this case, the balance of the relevant factors weighs in favor of permissive abstention in the Adversary Proceeding. First, given the State Court's familiarity with the issues and the fact that there are fully submitted dispositive motions pending and a trial previously scheduled for July 2026, the State Court will be able to resolve these issues quickly, thereby aiding in the efficient administration of the estate. The District Court has already held that the State Court Action "will have minimal effect on the administration of the bankruptcy estate," ECF No. 84 at 4, and the remaining issues in the Adversary Proceeding concerning nondischargeability and judgment enforcement will be decided by this Court. Second, with the exception of the determination of nondischargeability under Section 523, all of the underlying claims in the Adversary Proceeding for which Oak asks this Court to partially abstain, are matters of New York state law or substantially overlap with the issues to be decided under New York state law. The District Court found that, with respect to the claims in the State Court Action, "[s]tate law issues clearly predominate, as the only causes of action asserted in the complaint are for breach of contract, breach of fiduciary duty, conversion, and the like." ECF No. 84 at 4. Third, the litigation in State Court had been pending for years before the commencement of this bankruptcy action and thus "[t]he interests of comity are promoted by allowing the claims to remain where plaintiffs elected to bring them, i.e., state court." *See id.* Fourth, there are multiple non-debtor parties involved in the litigation in State Court and thus absent abstention, there is potential for duplication of court proceedings and increased costs to the parties. Finally, there is evidence that this bankruptcy proceeding is the result of forum shopping by Mr. Simpson. As the District Court noted in its recent decision "[m]ost saliently, factor seven cries out for permissive

20

abstention—to reward Simpson's repeated 'baseless attempts to remove [the State Court Action] to federal court' and his repeated and frivolous efforts to delay state court proceedings,' . . . to say nothing of his threats to file for personal bankruptcy to thwart state court jurisdiction . . . would make a mockery of the [District] Court." *Id.* (internal citations omitted).

In cases like this, which involve a pre-petition tort claim against a debtor in state court and the subsequent filing of a nondischargeability action in bankruptcy court based on the same tort, bankruptcy courts have consistently abstained from deciding the dischargeability queston until the state court first decides the tort claim. *See, e.g.*, *Wallace v. Guretzky,* No. CV–09–0071, 2009 WL 3171767 (E.D.N.Y. Sept. 29, 2009); *Williams v. Horowitz (In re Horowitz),* Bankr. No. 09–75567, 2010 WL 814103 (Bankr. E.D.N.Y. Mar. 1, 2010); *Fowler & Huntting Co. v. Granoff (In re Granoff),* 242 B.R. 216 (Bankr. D.Conn. 1999); *Barbaro v. Wider (In re Wider),* Bankr. No. 09–72993, 2009 WL 4345411 (Bankr. E.D.N.Y. Nov. 30, 2009); *Roberts v. Goidel (In re Goidel),* 150 B.R. 885 (Bankr. S.D.N.Y. 1993); *Blackmer v. Richards (In re Richards),* 59 B.R. 541 (Bankr. N.D.N.Y. 1986).

Accordingly, Oak respectfully requests that this Court exercise its discretion to partially abstain from hearing the Adversary Proceeding pending final determination of the issues by the State Court. Alternatively, and for the same reasons, Oak respectfully requests that this Court stay the Adversary Proceeding pending resolution of the State Court Action.

## **CONCLUSION**

For the foregoing reasons, Oak respectfully requests that the Court enter an order (i) clarifying that the claims asserted against non-debtors and the counterclaims asserted by Mr. Simpson and JJ Arch in the Oak Intervenor Action are not subject to the automatic stay; (ii) granting Oak relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to litigate the state law claims against Mr. Simpson in the Oak Intervenor Action; (iii) partially abstaining from

21

determining the issues in the Adversary Proceeding that are the subject of the Oak Intervenor

Action or alternatively, staying the Adversary Proceeding pending resolution of the State Court

Action; and (iv) granting such other and further relief as the Court deems just and proper.

Dated:  June 12, 2026          Respectfully submitted,
        New York, New York

                              BINDER & SCHWARTZ LLP

                              /s/ Eric B. Fisher
                              Eric B. Fisher
                              Lindsay A. Bush
                              675 Third Avenue, 26th Floor
                              New York, NY 10017
                              Tel.: (212) 510-7008
                              Email: efisher@binderschwartz.com
                              Email: lbush@binderschwartz.com

                              *Counsel for 608941 NJ Inc.*