**BINDER & SCHWARTZ LLP**
675 Third Avenue, 26th Floor
New York, NY 10017
Tel.: (212) 510-7008

*Counsel for 608941 NJ Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
In re:

JEFFREY SOLOMON SIMPSON,

Debtor.
------------------------------------------------------------------------x

608941 NJ INC.,

                Plaintiff,

        against

JEFFREY SOLOMON SIMPSON,

                Defendant.
------------------------------------------------------------------------x

|  |
|---|
| Chapter 11 |
| Case No. 26-10359 (LGB) |
|   |
|   |
|   |
| Adversary Proceeding |
| Case No. 26-01046 (LGB) |

**608941 NJ INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO CLARIFY THE SCOPE OF THE AUTOMATIC STAY, OBTAIN RELIEF FROM THE AUTOMATIC STAY, AND ASK THAT THE COURT PARTIALLY <u>ABSTAIN FROM HEARING THE ADVERSARY PROCEEDING</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.     THE AUTOMATIC STAY APPLIES ONLY WITH RESPECT TO OAK'S DIRECT CLAIMS AGAINST THE DEBTOR ...................................................... 2

    II.    THE *SONNAX* FACTORS WEIGH IN FAVOR OF GRANTING RELIEF FROM THE STAY ................................................................................................ 5

    III.   THE COURT SHOULD EXERCISE ITS DISCRETION TO PARTIALLY ABSTAIN FROM THE ADVERSARY PROCEEDING PENDING THE CONCLUSION OF THE STATE COURT ACTION .......................................... 10

CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Page(s)**

*In re 950 Meat & Grocery Corp.*,
617 B.R. 224 (Bankr. S.D.N.Y. 2020)................................................................................2

*Barbaro v. Wider (In re Wider)*,
Bankr. No. 09-72993, 2009 WL 4345411 (Bankr. E.D.N.Y. Nov. 30, 2009)........................11

*Blackmer v. Richards (In re Richards)*,
59 B.R. 541 (Bankr. N.D.N.Y. 1986).................................................................................11

*In re Burger Boys, Inc.*,
183 B.R. 682 (S.D.N.Y. 1994)..........................................................................................6

*Fowler & Huntting Co. v. Granoff (In re Granoff)*,
242 B.R. 216 (Bankr. D. Conn. 1999)..............................................................................11

*In re JJ Arch LLC*,
No. 24-10381, 2024 WL 2928033 (Bankr. S.D.N.Y. June 10, 2024), *aff'd*, No.
24-cv-08649, 2026 WL 1622865 (S.D.N.Y. June 5, 2026)...............................................3, 7, 8

*Queenie Ltd. v. Nygard Int'l*,
321 F.3d 282 (2d Cir. 2003).............................................................................................4

*Roberts v. Goidel (In re Goidel)*,
150 B.R. 885 (Bankr. S.D.N.Y. 1993)...............................................................................11

*Wallace v. Guretzky*,
No. CV-09-0071, 2009 WL 3171767 (E.D.N.Y. Sept. 29, 2009) ..........................................11

*Williams v. Horowitz (In re Horowitz)*,
Bankr. No. 09-75567, 2010 WL 814103 (Bankr. E.D.N.Y. Mar. 1, 2010) ..............................11

**Statutes**

11 U.S.C. § 362(a) ............................................................................................................2, 8

11 U.S.C. § 362(d)(1) .........................................................................................................13

11 U.S.C. § 523(a)(2), (4), (6) .......................................................................................10, 11

11 U.S.C. § 1109(b) ...........................................................................................................9

Oak respectfully submits this reply memorandum of law in further support of its Motion and in response to the memorandum of law in opposition filed by Mr. Simpson, ECF Doc. 115 (the "Opposition").[1]

## PRELIMINARY STATEMENT

As District Judge Vargas' June 3, 2026 decision (Memorandum Opinion and Order, *Simpson v. Chassen*, No. 25-cv-04004, ECF No. 84 (S.D.N.Y. June 3, 2026) (the "Anti-Removal Decision")) makes clear, the State Court is now the only potential forum where all of the issues and claims in the State Court Action can be resolved. In order to allow the State Court Action to proceed to resolution, this Court should clarify that the automatic stay does not apply to non-debtor parties and should lift the stay to allow for the adjudication of claims against Mr. Simpson.

In opposing this straightforward request for relief, Mr. Simpson takes aim at a "straw man" premise that Oak does not, and would not, advance: that this Court should abstain from deciding dischargeability. Oak seeks no such relief. Oak asks only that the State Court be permitted to adjudicate the prepetition state-law claims to judgment in the forum where they have been pending for years and where trial was imminent, while this Court retains exclusive authority over dischargeability and any enforcement against the estate.

It is striking that Mr. Simpson's Opposition ignores the Anti-Removal Decision, which squarely addressed whether the State Court Action should remain in state court and whether abstention principles apply. In denying Mr. Simpson's motion for relief from the anti-removal injunction that bars Mr. Simpson from removing the State Court Action, the Anti-Removal

---

[1] Capitalized terms used but not defined herein shall have the meaning set forth in Oak's Motion, ECF Doc. 81.

Decision determined that granting Mr. Simpson's requested relief "would be futile" because Plaintiff's removal would be subject to both mandatory and permissive abstention. Mr. Simpson cannot in good faith ask this Court to reach a contrary result without addressing the Anti-Removal Decision's controlling analysis of the very same issues.

Mr. Simpson's analysis of the *Sonnax* factors is directly at odds with the Anti-Removal Decision that his Opposition inexplicably ignores. In the Anti-Removal Decision, Judge Vargas found that: state law issues "clearly predominate"; the State Court is fully familiar with the issues; trial had been scheduled for July 2026; the State Court Action "will have minimal effect on the administration of the bankruptcy estate"; and Simpson's repeated tactics constitute "baseless attempts to remove" and "frivolous efforts to delay." Anti-Removal Decision at 3–4.

The *Sonnax* factors overwhelmingly favor granting relief from the automatic stay. Indeed, following the Anti-Removal Decision, the State Court is the only forum where the entire controversy, including claims by and against non-debtor parties whose claims are not covered by the stay, can be resolved in a single proceeding. For similar reasons, Oak respectfully submits that this Court should exercise its discretion to partially abstain from hearing the Adversary Proceeding to allow the State Court Action to be litigated to judgment before addressing issues regarding the nondischargeability of the debt and the enforcement of any judgment against Mr. Simpson through this bankruptcy proceeding.

**ARGUMENT**

**I.    THE AUTOMATIC STAY APPLIES ONLY WITH RESPECT TO OAK'S DIRECT CLAIMS AGAINST THE DEBTOR**

It is a fundamental tenet of bankruptcy law that the automatic stay applies to litigation against a debtor and that this protection does not extend to claims against non-debtors or claims asserted by a debtor. 11 U.S.C. § 362(a); *see also In re 950 Meat & Grocery Corp.*, 617 B.R.

2

224, 228 (Bankr. S.D.N.Y. 2020); *In re JJ Arch LLC*, No. 24-10381, 2024 WL 2928033, at *8 (Bankr. S.D.N.Y. June 10, 2024), *aff'd*, No. 24-cv-08649, 2026 WL 1622865 (S.D.N.Y. June 5, 2026). Yet, Mr. Simpson argues in his Opposition that this Court should "construe" the automatic stay to include claims against non-debtors JJ Arch and AREH. Opp. at 10. This argument fails both factually and legally.

Mr. Simpson argues that construing the stay to apply to JJ Arch and AREH is justified in order to prevent the litigation of intertwined issues in multiple courts. *See generally* Opp. at 10-12. In support of his argument, Mr. Simpson relies on Justice Cohen's March 10, 2026 Court Notice, issued immediately after Mr. Simpson's bankruptcy filing, which stated that "[m]aintaining related proceedings in a single forum (to ensure coordination and avoid inconsistent rulings) has long been the Courts preference in these interconnected matters, and at this juncture the Bankruptcy Court appears to be that forum." Opp. at 11.

What Mr. Simpson fails to acknowledge, however, is that following the Anti-Removal Decision, <u>only</u> the State Court can resolve all issues in the litigation in a single forum.[2] Given that the State Court Action cannot be removed to this Court, "construing" the automatic stay to apply to claims against JJ Arch and AREH would leave those claims without a forum in which they can be adjudicated. Oak agrees with Mr. Simpson that resolution of all claims in one forum is the desired result, but that forum can only be the State Court. The Opposition fails to acknowledge this reality.

---

[2] Although Mr. Simpson fails to mention the Anti-Removal Decision in opposition to this Motion, he discusses the decision in his opposition to the lift stay motion brought by Jared Chassen. Mr. Simpson's discussion of the Anti-Removal Decision in that opposition is disingenuous, as Mr. Simpson utterly fails to address its holding: that the State Court Action can proceed only before the State Court.

Moreover, extension of the stay to non-debtor parties is an extraordinary remedy, available only in narrow circumstances where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Queenie Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003). Mr. Simpson's assertion that this relief is appropriate here because JJ Arch and AREH were previously managed by Mr. Simpson and "any potential liability of these LLCs to Oak resulted from the actions of the Debtor," Opp. at 11, misses the mark and fails to meet the "narrow circumstances" and heavy burden required for such extraordinary relief.

JJ Arch is an LLC with its own assets, obligations, and its own court-appointed receiver. In March 2025, the State Court appointed a receiver and granted him "complete and sole managerial authority" over the entities and properties controlled by JJ Arch. NYSCEF Doc. No. 1360. The receiver is authorized to, among other things, manage, rent, lease, sell, develop and take any other steps to dispose of the receivership assets. Critically, in another relevant decision ignored by Mr. Simpson, this Court recently modified the automatic stay to allow the receiver to continue to take certain actions with respect to entities and properties controlled by JJ Arch. ECF Doc. 116. Thus, the contention in the Opposition that Mr. Simpson and JJ Arch are one and the same ignores that Mr. Simpson is no longer in control of JJ Arch and ignores this Court's recent ruling. Similarly, pursuant to a court order entered by the State Court, Oak currently serves as AREH's acting managing member, and the same analysis applies with equal force to AREH.

Mr. Simpson's only justification as to why he should not be required to proceed with his affirmative claims and counterclaims in the State Court is Justice Cohen's March 10, 2026 Court

Notice, which, as set forth above, has been overtaken by events. Justice Cohen paused the proceedings in the State Court Action pending further clarification concerning the proper forum for adjudication of those claims. Clarification has now been provided through the Anti-Removal Decision, which makes clear that the State Court Action will remain before Justice Cohen.

For these reasons, Oak respectfully submits that the Court should clarify that the automatic stay does not apply to claims asserted against non-debtors JJ Arch and AREH, or to claims and counterclaims asserted by Mr. Simpson and JJ Arch in the State Court Action. That clarification, however, does not resolve Oak's separate request for relief from the stay as to Oak's direct prepetition claims against Mr. Simpson. To the extent those claims are subject to the automatic stay, the same practical and equitable considerations – most importantly, that the State Court is now the only forum capable of adjudicating the entire controversy to judgment, while this Court retains exclusive authority over dischargeability and enforcement – establish cause to lift the stay under *Sonnax*.

## II. THE *SONNAX* FACTORS WEIGH IN FAVOR OF GRANTING RELIEF FROM THE STAY

Mr. Simpson's analysis of the *Sonnax* factors is directly contradicted by findings in the decisions of U.S. Bankruptcy Judge Mastando, lifting the stay in the JJ Arch bankruptcy and later dismissing the case as a bad-faith filing, and the Anti-Removal Decision, denying Simpson's post-petition motion for relief from the anti-removal injunction. The Opposition addresses neither decision, which both support Oak's argument that each of the relevant *Sonnax* factors weighs decisively in favor of lifting the stay.

**Factor 1 (Complete Resolution)**. Based on the Anti-Removal Decision, the State Court is the only forum where the parties' disputes can be litigated to conclusion. Mr. Simpson's argument that relief from the stay would "only partially resolve the dischargeability issues"

5

because "only the bankruptcy court can determine dischargeability issues," Opp. at 7, ignores the nature of the relief requested by Oak. Through its Motion, Oak asks that this Court allow the State Court Action to be litigated to judgment against Simpson. Thereafter, this Court will be in a position to exercise its core powers concerning dischargeability.

Indeed, resolving the State Court Action is critical to any plan of reorganization because a significant portion of Mr. Simpson's equity is tied to his interest in JJ Arch. Only the State Court can decide, for example: (i) whether Mr. Simpson was properly removed from JJ Arch, in which case Mr. Simpson's equity in JJ Arch would not be property of the estate; (ii) what fees and expenses should go to the court-appointed receiver before any distribution to stakeholders; and (iii) resolution of Oak's claims against JJ Arch, which may significantly diminish the value of JJ Arch. Thus, resolution of all of the claims in the State Court Action is preferable and will assist in the overall resolution of the estate.

Without relief from the stay, many of the same claims would be litigated in State Court and this Court simultaneously, which would be inefficient and risk inconsistent results for claims arising out of the same facts and involving the same legal issues. Thus, this factor weighs in favor of lifting the stay "in order to allow timely adjudication of the issues in appropriate forums that could provide complete relief." *In re Burger Boys, Inc.*, 183 B.R. 682, 689 (S.D.N.Y. 1994).

**Factors 2 and 3 (No Interference with the Bankruptcy Case/Debtor as Fiduciary).** Judge Vargas found that the State Court Action "will have minimal effect on the administration of the bankruptcy estate." Anti-Removal Decision at 4. Mr. Simpson fails to address this ruling and states, without support, that the "state court action clearly has a direct connection with the bankruptcy case." Opp. at 7-8. However, lifting the stay to permit adjudication of the merits of the State Court Action will not impair the administration of this estate, as enforcement of any

6

judgment against the Debtor will be addressed through the bankruptcy proceeding, as will issues as to nondischargeability.

As Mr. Simpson concedes with respect to factor 3, there are claims in the State Court Action that implicate Mr. Simpson as fiduciary. Opp. at 8. The fact that there are also claims against Mr. Simpson that do not involve his role as fiduciary at most makes this factor neutral.

**Factors 4, 10, and 11 (Specialized Tribunal, Judicial Economy, and Trial Readiness).** Mr. Simpson dismisses the State Court as merely "a court of general jurisdiction" that is "not a specialized tribunal." Opp. at 8. This argument ignores the substantial investment that the State Court already has made in understanding the facts and legal issues in the case. It also ignores the Anti-Removal Decision, which found that "the presiding Judge is fully familiar with the issues presented, and trial has been scheduled for July 2026 . . . there can be little doubt that it could be timely adjudicated in State Court." Anti-Removal Decision at 3. Judge Mastando previously found the same. *In re JJ Arch LLC*, 2024 WL 2928033, at *10.

With respect to "the interests of judicial economy and the expeditious and economical resolution of the litigation" (factor 10), Mr. Simpson acknowledges the "preference for maintaining proceedings in a single forum." Opp. at 8. Following the Anti-Removal Decision, the State Court is the only forum where the claims involving third parties and the claims and counterclaims asserted by Mr. Simpson may be heard. Such claims will move forward in the State Court, as the automatic stay does not extend to such claims. If the stay is left in place as to claims in the State Court Action against Mr. Simpson, and such claims are simultaneously litigated before this Court in connection with its determination as to dischargeability, it would result in significantly increased costs to the estate and to the parties, and would lead to confusion

7

and potentially inconsistent rulings on claims between many of the same parties and arising from the same facts.

Mr. Simpson's assertion that "the parties are not ready for trial in the state court" (factor 11), Opp. at 8, is undermined by the extensive record before the State Court, which includes fully submitted dispositive motions, including Oak's motion to strike Simpson's and JJ Arch's pleadings and for default judgment based on their complete failure to participate in discovery, and a trial that has been scheduled for July 2026. Any lack of readiness for trial on Mr. Simpson's behalf is the result of Mr. Simpson's unrelenting, obstructionist tactics. Nor does Mr. Simpson address Judge Mastando's ruling in connection with the JJ Arch bankruptcy, which found that, even back in June 2024, the first, tenth, and eleventh *Sonnax* factors favored lifting the stay. *In re JJ Arch LLC*, 2024 WL 2928033, at *10.

**Factor 6 (Third Parties).** The Opposition claims the action "does not primarily involve third parties" because JJ Arch and AREH "were managed by the Debtor." Opp. at 8. But the question is not whether the Debtor once managed these entities; it is whether the claims *primarily* involve third parties, which they clearly do. The Intervenor Complaint asserts claims against JJ Arch (Counts I, II, V) and AREH (Count IX), and seeks a declaratory judgment that Oak—not JJ Arch—is AREH's managing member (Count VIII). Similarly, the remaining claims asserted by Mr. Simpson and others in the State Court Action primarily relate to JJ Arch and AREH and now involve a court-appointed receiver for JJ Arch and Oak stepping in to act as the managing member of AREH. These claims will proceed in State Court regardless of the stay because, as set forth above, they are not covered by Section 362(a) of the Bankruptcy Code and because the Anti-Removal denied Mr. Simpson's effort to remove the State Court Action.

8

**Factor 7 (Prejudice to Other Creditors).** The Debtor asserts that "creditors who are not parties to the state court action" would be "prejudiced by the denial of their rights to raise and be heard on issues under 11 U.S.C. § 1109(b)." Opp. at 8. This is a non sequitur. Section 1109(b) grants parties in interest the right to be heard on any issue in a *bankruptcy case*—it does not give creditors veto power over whether a state court action may proceed. Moreover, lifting the stay here benefits the estate because it will allow for the determination of whether litigating creditors have claims against the estate and, if so, in what amounts.

**Factor 12 (Balance of Harms).** The Opposition contends that the balance of harms weighs in favor of Mr. Simpson because the automatic stay "relieves the pressure that drove him into bankruptcy, and affords him a breathing spell." Opp. at 9. But bankruptcy protections do not exist to assist Mr. Simpson to evade accountability for pre-petition fraud and mismanagement, particularly where it was Mr. Simpson who commenced the underlying litigation and then methodically obstructed it for years.

Further, the Debtor's claim that he would be "*pro se*" in state court (Opp. at 9) is a litigation choice, not a basis for maintaining the stay. Simpson had counsel in the State Court Action until he chose to boycott the proceedings.[3] Notably, regardless of whether Mr. Simpson was *pro se* in the State Court Action or represented by counsel, his obstructionist tactics and refusal to address the merits of his claims persisted nonetheless. That his current bankruptcy counsel's engagement does not cover state court litigation is a consequence of Simpson's own

---

[3] In fact, throughout the State Court Action, Simpson has had five different counsel appear and subsequently withdraw from the representation. *See* Index No. 158055/2023, Motion Seq. Nos. 6, 12, 18, 25, and 38. Simpson's last counsel withdrew after the Court removed his NYSCEF filing privileges (because the filings were used to overload the docket) and prohibited Simpson from sending threatening serial email communications to chambers, a number of which Simpson submitted *ex parte*.

decisions and is not relevant to whether the stay should be lifted.[4]  Disregarding the significant time and resources the parties have spent litigating before the State Court and rewarding Mr. Simpson's tactics would, in the words of Judge Vargas, "make a mockery of the Court."  Anti-Removal Decision at 4.

**III.    THE COURT SHOULD EXERCISE ITS DISCRETION TO PARTIALLY ABSTAIN FROM THE ADVERSARY PROCEEDING PENDING THE CONCLUSION OF THE STATE COURT ACTION**

Oak has requested, through its Motion, that this Court partially abstain from hearing the issues in the Adversary Proceeding until the State Court Action has been litigated to conclusion on the merits, so that any overlapping issues are not litigated twice: once in the State Court and a second time before this Court.   Oak acknowledges, as it did in its Motion, that the determination as to the dischargeability of debt under 11 U.S.C. § 523(a)(2), (4), or (6) is a core proceeding that must be adjudicated by this Court.   Mr. Simpson erroneously argues in his Opposition that Oak is seeking to require that he litigate issues pertaining to dischargeability in state court.  *See* Opp. at 5 ("In short, requiring the Debtor to litigate any issue pertaining to the dischargeability action in the state court contravenes the purpose of the discharge in general and section 523(c) in particular.").  This is not the relief sought by Oak.

It is through this lens that Mr. Simpson erroneously applies the twelve factors that courts

---

[4] The Debtor's argument that a common interest agreement between Oak and Chassen and the timing of the lift-stay motions evidence "bad faith" and "an attempt to seize an unfair litigation advantage," is meritless.  ECF No. 114 ¶ 9.  Common interest and joint defense agreements are routine in multi-party litigation, unremarkable, and certainly do not evidence bad faith.  Seeking to lift the stay in a state court proceeding that existed long before a bankruptcy filing is similarly unremarkable.  The relevant evidence of bad faith is Simpson's own conduct: serial frivolous removals, refusal to participate in discovery, threats against the State Court, boycotting the proceedings he himself initiated, and filing bankruptcy on the eve of adverse rulings—all recognized by Judges Furman, Vargas, and Mastando.

often apply in determining whether permissive abstention applies.  Specifically, Mr. Simpson argues that: "dischargeability issues are matters of federal law, rather than state law" (**factor 2**); "there is no unsettled state law issue to be applied" (**factor 3**); "[d]ischargeability issues are central to a bankruptcy case of an individual, and are clearly core proceedings, since they concern the restructuring of debtor-creditor relations" (**factors 6, 7, and 8**); "[t]here is no issue of forum shopping because nondischargeability proceedings under section 523(a)(2), (4), and (6) are required to be brought in bankruptcy court" (**factor 10**); and "[t]here is no right to a jury trial in a dischargeability proceeding" (**factor 11**).  Opp at 6.  But Oak is not asking that this Court abstain from determining dischargeability issues—indeed such issues are core and, by definition, permissive abstention would never apply.

The question properly construed is whether pre-petition tort claims against the Debtor, which were asserted in the State Court Action, were litigated for three years before the State Court, and had been scheduled for trial in July 2026, should be decided on their merits by the State Court before this Court addresses the dischargeability question.  This relief is routinely granted.  *See, e.g.*, *Wallace v. Guretzky*, No. CV-09-0071, 2009 WL 3171767 (E.D.N.Y. Sept. 29, 2009); *Williams v. Horowitz (In re Horowitz)*, Bankr. No. 09-75567, 2010 WL 814103 (Bankr. E.D.N.Y. Mar. 1, 2010); *Fowler & Huntting Co. v. Granoff (In re Granoff)*, 242 B.R. 216 (Bankr. D. Conn. 1999); *Barbaro v. Wider (In re Wider)*, Bankr. No. 09-72993, 2009 WL 4345411 (Bankr. E.D.N.Y. Nov. 30, 2009); *Roberts v. Goidel (In re Goidel)*, 150 B.R. 885 (Bankr. S.D.N.Y. 1993); *Blackmer v. Richards (In re Richards)*, 59 B.R. 541 (Bankr. N.D.N.Y. 1986).  Here, too, Oak should be permitted to litigate the issues in the State Court Action to judgment before the State Court.  The alternative urged by Mr. Simpson would result in parallel, partial and potentially inconsistent adjudications of the same issues before two different courts

11

and would result in significantly increased costs to the estate, and the other parties involved.

Mr. Simpson's application of the permissive abstention factors to dischargeability is not the appropriate analysis. Oak is not, and would not, argue that this Court should abstain from a nondischargeability determination. The relevant question is whether because of the overlapping issues, permissive abstention is appropriate to allow the State Court Action to proceed to judgment before a determination as to nondischargeability is made by this Court. As to this question, the balance of the relevant factors weighs in favor of permissive abstention in the Adversary Proceeding:

- The State Court is familiar with the issues and facts and will be able to resolve the pending dispositive issues and conduct a trial promptly;

- The Anti-Removal Decision has already determined that the State Court Action "will have minimal effect on the administration of the bankruptcy estate," Anti-Removal Decision at 4, and issues concerning nondischargeability and judgment enforcement will be decided by this Court;

- The underlying claims in the Adversary Proceeding are predominantly matters of New York state law;

- The State Court Action has been pending for years before the commencement of this bankruptcy action and thus the interests of comity are best served by allowing the claims to remain in State Court;

- There are multiple non-debtor parties involved in the litigation in State Court that the Anti-Removal Decision and this Court's recent ruling have determined must be adjudicated in State Court and thus absent abstention, there is potential for duplication of court proceedings and increased costs to the parties; and

- There is ample evidence that this bankruptcy proceeding is the result of forum shopping by Mr. Simpson, as recognized in the Anti-Removal Decision.

Accordingly, Oak respectfully requests that this Court exercise its discretion to partially abstain from hearing the Adversary Proceeding pending the State Court's adjudication of the

claims.  Alternatively, and for the same reasons, Oak respectfully requests that this Court stay the Adversary Proceeding pending resolution of the State Court Action.

<u>**CONCLUSION**</u>

For the foregoing reasons, Oak respectfully requests that the Court enter an order (i) clarifying that the claims asserted against non-debtors and the counterclaims asserted by Mr. Simpson and JJ Arch in the Oak Intervenor Action are not subject to the automatic stay; (ii) granting Oak relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to litigate the state law claims against Mr. Simpson in the Oak Intervenor Action; (iii) partially abstaining from determining the issues in the Adversary Proceeding that are the subject of the Oak Intervenor Action or alternatively, staying the Adversary Proceeding pending resolution of the State Court Action; and (iv) granting such other and further relief as the Court deems just and proper.

Dated:  July 6, 2026
      New York, New York

Respectfully submitted,

BINDER & SCHWARTZ LLP

/s/ Eric B. Fisher
Eric B. Fisher
Lindsay A. Bush
675 Third Avenue, 26th Floor
New York, NY 10017
Tel.: (212) 510-7008
Email: efisher@binderschwartz.com
Email: lbush@binderschwartz.com

*Counsel for 608941 NJ Inc.*